March 31, 1977

## 77-16 MEMORANDUM OPINION FOR THE DIRECTOR OF THE BUREAU OF PRISONS

### Authority of Bureau of Prisons Physicians to Perform Autopsies

This is in response to your memorandum requesting our opinion on whether wardens of Federal prisons can be empowered to authorize autopsies of deceased inmates without regard to State laws requiring consent of next of kin or approval by State officials. We have examined the question, and we conclude that legislation is necessary for this purpose. In addition, we suggest the lines that a proposed statute might follow.

The rights of a surviving spouse or next of kin in a dead body derive from the common law. While the details vary among the States, a survey of the law of the District of Columbia and a geographically diverse sample of State law (California, Georgia, Kansas, Massachusetts, and Texas) shows agreement on general principles. The surviving spouse, if any, and otherwise the next of kin have only a right to the reasonably prompt possession on the *intact* body for purpose of burial or cremation. Although this right is not considered a property right, damages may be awarded for unauthorized interference with the body, including an unauthorized autopsy. *See, e.g., Steagall* v. *Doctors' Hospital,* 171 F. 2d 352 (D.C. Cir. 1948); *Pollard* v. *Phelps,* 56 Ga. App. 408 (1937); *Weingast* v. *State,* 44 Misc. 2d 824, 254 N.Y.S. 2d 952 (1954); *Aetna Casualty & Surety Co.* v. *Love,* 132 Tex. 280, 121 S.W. 2d 986 (1939). *See, generally, Annotation,* 83 A.L.R. 2d 956 (1961).

The right, however, is subject to public necessity as defined by State statute. As a general rule, if the proper State administrative or judicial officer determines in good faith that the statutory grounds for an autopsy exist, he or she may proceed without the consent of the spouse or next of kin. *See, e.g.,* California Health & Safety Code § 7113; California Government Code § 27491.4; Code of Georgia § 21-203(3); Massachusetts General Laws Annotated, Ch. 38, § 6; New York Public Health Law § 4210; *Gahn* v. *Leary,* 318 Mass. 425, 61 N.E. 2d 844, (1945); *Gray* v. *State,* 55 Tex. Cr. 90, 114 S.W. 635 (1908).

State statutory grounds for autopsy vary, but generally include any sudden, violent, unexplained, or otherwise possibly criminally caused death. *See, e.g.,* California Government Code § 27491; Code of Georgia § 21-205; New York Public Health Law § 4210; Texas Code of Criminal Procedure, Art. 49.01. Three of the States surveyed (California, Georgia, and Texas) specifically provide for autopsies in the case of any death in prison, and New York authorizes the Commissioner of Corrections to procure an autopsy at his discretion. California Government Code § 24791; Code of Georgia § 21-205(2); New York Public Health Law § 4210; Texas Code of Criminal Procedure, Art. 49.01.

Our partial examination of State law leads us to conclude that the right of the spouse or next of kin to control the disposition of a dead body is subject to public necessity as defined by one with authority to do so. The statutory power of local officials to order autopsies is given in the furtherance of a state interest, usually the investigation of crime or the protection of public health.

Because the Attorney General and the Bureau of Prisons are responsible for the custody, discipline, and welfare of Federal prisoners, 18 U.S.C. §§ 4001, 4042(3), Congress can, of course, confer on them the specific authority to conduct autopsies without consent when reasonably necessary to perform these functions.[1] *See, generally, Ex parte, Siebold,* 100 U.S. 371, 383-86 (1879); *McCulloch* v. *Maryland,* 17 U.S. 316, 408-17 (1819). By analogy with California, Georgia, New York, and Texas law, a statute can provide autopsy authority for any death occurring in prison.

More circumscribed authority might be desired to preclude autopsies for scientific or medical reasons unrelated to prison administration. If so, a statute could appropriately authorize an autopsy in the event of homicide, suicide, fatal illness or accident, or other unexplained death of an inmate if the Bureau determines one is necessary to detect crime, maintain discipline, protect the health or safety of the inmates, remedy official misconduct, or defend the United States or its employees from tort liability arising from the administration of a Bureau institution.

You have suggested that the authority to perform autopsies without consent might be equally permissible by regulation promulgated pursuant to the authority conferred by 5 U.S.C. § 301.[2] Such regulations

---

[1] Under 49 U.S.C. § 1441(c), for example, the National Transportation Safety Board (NTSB) is empowered to conduct an autopsy of any person who was aboard an aircraft involved in a fatal crash. Congress concluded that although autopsies were a valuable tool in air crash investigations, their use had been hindered by the provisions of various State laws. Accordingly, the legislation was enacted to enable the NTSB to "proceed promptly with autopsies . . . with a minimum of delay and thus to overcome difficulties where autopsy information is dependent upon the consent of next of kin or compliance with state procedure . . . ." H.R. Rep. No. 2487, 87th Cong., 2d Sess. 5 (1962).

[2] That section provides, in pertinent part:

The head of an Executive . . . department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its property.

It has been in substantially this form since its origin as § 161 of the Revised Statutes.

have the force of law if within the scope of the relevant statute. *Georgia v. United States*, 411 U.S. 526, 536 (1973); *Smith v. United States*, 170 U.S. 372, 377–78 (1898). However, § 301 does not confer authority to change the substantive rights of persons not connected with the Government. Regulations purporting to do so are valid only if consistent with independent statutory authority. Compare *United States v. Morehead*, 243 U.S. 607 (1917), with *United States v. George*, 228 U.S. 14 (1913); *see, Georgia v. United States, supra*; 36 Op. A.G. 21, 25 (1929); 17 Op. A.G. 524, 525 (1883). It is therefore unlikely that a regulation relying solely on § 301 could legally alter the State law rights of third persons.

The only pertinent substantive statute here is 18 U.S.C. § 4001.[3] Subject to constitutional limits, this section authorizes the Attorney General to restrict access of third parties to prisoners in the interest of prison management. *See, e.g., Saxbe v. Washington Post Co.*, 417 U.S. 843 (1974); *Carter v. United States*, 333 F. 2d 354 (10th Cir. 1964). It can be argued that the power to operate the prison system includes the power to retain and perform an autopsy on the body of a deceased prisoner without consent when necessary to preserve discipline or protect the health and safety of surviving prisoners. The Armed Forces, which exercise a similar degree of authority over their members, conduct nonconsensual autopsies without express statutory authority.[4]

On the other hand, we believe that the weight of authority speaks against the validity of such a regulation premised on 18 U.S.C. § 4001. As your request points out, no other Federal civilian agency performs autopsies without consent unless authorized by statute. Congress has specifically provided for autopsies of prisoners without consent in one limited situation.[5] As noted above, it has also empowered the National Transportation Safety Board to conduct autopsies without consent.[6] It can be inferred from these precedents that statutory authority is required to override a claimant's right to the body of a prisoner. Moreover, the consensus of State decisions is that consent is necessary unless

---

[3] In pertinent part, it provides:
  The control and management of Federal penal and correctional institutions . . . shall be vested in the Attorney General, who shall promulgate rules for the government thereof . . .

[4] For example, Army Reg. 40–2, para. 4–4, empowers the commander to have an autopsy performed on any member of the armed forces who dies on active duty "when it is considered necessary for the protection of the military community to determine the true cause of death . . . ." The authority for this regulation is 10 U.S.C. § 3012, which authorizes the Secretary of the Army to prescribe regulations for its government, and the Department of Defense Appropriation Act of 1977, § 740, which authorizes the Army to provide medical care.

[5] 18 U.S.C. § 3567 permits the court, as part of a death sentence, to order the dissection of the body of a prisoner convicted of first degree murder or rape.

[6] *See* 49 U.S.C. § 1441(c).

an explicit statute is to the contrary.[7] Finally, as stated above, several States have found it necessary to provide specifically for autopsies without consent in prison deaths. We conclude therefore that 18 U.S.C. § 4001 does not provide the authority you desire and that legislation is required to authorize nonconsensual autopsies.

In addition, it would appear that legislation is needed to resolve two technical difficulties. First, it could provide the clear authority to employ outside medical personnel instead of Bureau personnel hired under the authority of 18 U.S.C. § 4001 or Public Health Service (PHS) doctors detailed under 18 U.S.C. § 4005. Second, it could limit the tort liability of Bureau personnel or other persons for any wrongful autopsy by restricting claimants to the Federal Tort Claims Act.

Finally, it should be noted that certain religions forbid an autopsy of their adherents. Any statute that dispenses entirely with consent may be attacked by a claimant of a body as an infringement on the free exercise of religion. In such a case, the constitutionality of the regulation would turn on the balance between the claimant's First Amendment rights and the Federal interest in conducting the autopsy. *See, Wisconsin* v. *Yoder,* 406 U.S. 205, 213–15 (1972); *Cruz* v. *Beto,* 405 U.S. 319, 321–22 (1972). The governmental interests in the discipline, safety, and health of prisoners are probably stronger than the incidental offense to the claimant's beliefs. *See, Prince* v. *Massachusetts,* 321 U.S. 158 (1944); *Winters* v. *Muller,* 306 F. Supp. 1158, 1166 (D. N.Y. 1969); *Jehovah's Witnesses in the State of Washington* v. *King County Hospital Unit No. 1,* 278 F. Supp. 488, 503–05 (D. Wash. 1967), *prob. juris. declined,* 390 U.S. 598 (1968); *cf., Jacobson* v. *Massachusetts,* 197 U.S. 11, 27–30 (1905). *But cf., Wisconsin* v. *Yoder, supra.* It would be advisable to minimize the problem, however, by providing by statute or regulation that religious scruples will be respected when investigative needs permit. *See, e.g.,* 49 U.S.C. § 1441(c).[8]

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[7] *E.g., Donnelly* v. *Guion,* 467 F. 2d 290 (2d Cir. 1972); *Crenshaw* v. *O'Connell,* 235 Mo. App. 1085, 150 S.W. 2d 489 (1941); *Darcy* v. *Presbyterian Hospital,* 202 N.Y. 259, 95 N.E. 695 (1911); *Gurganious* v. *Simpson,* 213 N.C. 613, 197 S.E. 163 (1938); *Frick* v. *McClelland,* 384 Pa. 597, 122 A. 2d 43 (1956); *Aetna Casualty & Surety Co.* v. *Love,* 132 Tex. 280, 121 S.W. 2d 986 (1939). *See, generally, Annotation,* 83 A.L.R. 2d 956.

[8] 42 U.S.C. § 233 provides this protection to Public Health Service employees. Similar protection for private physicians who might perform autopsies and for Bureau personnel who authorize them may be desirable.