## Weigle v. Motors Insurance Corporation

450

*John J. Dirienzo, Jr.*, for plaintiff.
*James B. Yelovich* and *Michael J. Seymour*, for defendants.

COFFROTH, *P.J.*, March 18, 1980—This case is here on defendants' preliminary objections to count 3 of the complaint in assumpsit for breach of express and implied covenants of a vehicle collision and upset insurance policy, consisting of a demurrer for failure to state a cause of action and an alternative motion to strike the averments of bad faith on the ground of insufficiency, and on objections to count 4 of the complaint in trespass consisting of a demurrer and an alternative motion to strike the claim for punitive damages.

The prime issues in the case are: (1) the nature and extent of an insurer's obligation of good faith to the insured and the sufficiency of the averments of the breach thereof, (2) whether breach of the obligation creates alternative contract and tort causes of action, and (3) the nature and extent of liability for punitive damages and the sufficiency of the averments to establish such liability.

## FACTS AND PLEADINGS

Plaintiff's vehicle was a tractor and dump trailer. While unloading coal on March 15, 1979, the trailer upset, causing $14,000 damage to the tractor and $5,900 damage to the trailer. On March 23, 1979, while the damaged tractor was in storage, it caught

fire from unknown causes and burned causing an additional $4,000 loss.

Count 1 of the complaint is in assumpsit on the insurance policy for the actual cash value of the upset loss, count 2 is in assumpsit on the policy for actual cash value for the fire loss, count 3 is in assumpsit for consequential damages (loss of business income, interest and litigation fees and expense) for breach of the implied covenant of good faith in making settlement, and count 4 is in trespass on substantially the same averments and for the same damages as in count 3, but claiming also punitive damages.

The averments of bad faith assert that the insurer offered to pay only for the portion of the trailer which struck the ground in the upset, attributing other resulting upset damage to "mechanical failures" which were excluded from the policy; offered only $1,700 for trailer damage when the insurer possessed an estimate of $2,253.50, although the latter amount was offered about one month later; informed plaintiff that the fire loss was incendiary, not accidental, without supporting evidence and without disclosing the results of the fire marshal's investigation; refused plaintiff's demand for arbitration of the fire loss because incendiary; failed to have the fire loss investigated by the National Automobile Theft Bureau; and made no fire investigation other than a field examination by defendants' adjuster and by the state fire marshal.

## DISCUSSION

Count 3—Motion To Strike:

The issue is whether the averments above summarized sufficiently plead a violation of the implied

covenant of good faith and due care in handling plaintiff insured's interest under the policy. The term "good faith" is an elastic term which has been variously defined depending on the nature of the controversy and the context of the statute or rule in which the term is used. The term is "ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." 35 C.J.S., Faith, page 605. "Good faith imports honesty of purpose and integrity of conduct." Smith v. Whitman, 39 N.J. 397, 189 A. 2d 15, 19 (1963). It will be noticed that these definitions give a double-barrelled cast to the phrase: honesty *and* fidelity to duty (integrity of conduct); fidelity to duty implies reasonable care and diligence; C.J.S., supra, at fn.69, which goes beyond honesty as that term is ordinarily used. Although many of the authorities in other areas of the law confine good faith to honesty, it is clear that in Pennsylvania the insurer's duty to the insured is "to act in *good faith and with due care* in representing the interests of the insured." Gedeon v. State Farm, 410 Pa. 55, 59, 188 A. 2d 320 (1963), emphasis supplied, quoted with approval in Gray v. Nationwide Mutual Ins. Co., 422 Pa. 500, 508, 223 A. 2d 8 (1966); Diamon v. Penn Mutual Fire Ins. Co., 247 Pa. Superior Ct. 534, 550, 372 A. 2d 1218 (1977) (duty to "exercise reasonable care in investigating a claim" by the insured). Thus, good faith in this context of insurance law means not only a duty to act honestly, but a duty of positive conduct in faithfully pursuing an obligation imposed by law or contract. Compare Maribello Unemployment Compensation Case, 200 Pa. Superior Ct. 330, 188 A. 2d 861 (1963); Rosenberger v. Unemployment Com-

pensation Board, 31 Pa. Commonwealth Ct. 455, 376 A. 2d 1018 (1977); but see Loose Estate, 41 D. & C. 2d 361, 363 (1967).[1]

The gravamen of the averments presently in issue appears to be that plaintiff's claims were denied without adequate investigation, that the charge of incendiary origin for the fire was made without disclosure of the basis for it, that the settlement offer made was unreasonably low under the circumstances, and that plaintiff was unreasonably forced into this litigation. The allegations, if proved, are sufficient pleading of bad faith and want of due care in defendants' performance of duty to plaintiff. Compare Cowden v. Aetna Casualty & Surety Co., 389 Pa. 459, 194 A. 2d 223 (1957); Diamon v. Penn Mutual, supra; City of Philadelphia Appeal, 40 Pa. Commonwealth Ct. 409, 398 A. 2d 224 (1979). Of course, it will be for the factfinder to determine whether under the evidence actually produced there was a violation of the implied obligation of good faith and due care. Compare W. W. Coal Co. v. Pennsylvania National

1. Other definitions of "good faith" may be found in Penn Township v. Yecko Bros., 420 Pa. 386, 217 A. 2d 171 (1966), ("planned circumvention" of zoning law is bad faith); Frick v. McClelland, 384 Pa. 597, 600, 122 A. 2d 43 (1956) (coroner's statutory duty to act in good faith); Davis v. Pennsylvania Company, 337 Pa. 456, 12 A. 2d 66 (1940), banking (distinction between negligence and bad faith); Cochran v. Fox Chase Bank, 209 Pa. 34, 39, 58 Atl. 117 (1904) (banking); Potoczny v. Dydek, 192 Pa. Superior Ct. 550, 560, 162 A. 2d 70 (1960) ("breach of faith, or wilful failure to respond to a plain and well-understood obligation"—land contract); Moyer v. State Real Estate Commission, 1 Pa. Commonwealth Ct. 515, 276 A. 2d 327 (1971) (real estate broker's statutory duty to act in good faith); Uniform Commercial Code, §1-201(19), 12A P.S. §1-201(19) [see now, 13 Pa.C.S.A. §1201], defining good faith as "[h]onesty in fact in the conduct or transaction concerned."

Mutual Cas. Co., 75 D. & C. 2d 621, 626, 30 Somerset 69, 74 (1975).

Accordingly, the motion to strike the allegations of bad faith in count 3 must be denied.

Count 4—Demurrer:

The question raised here is whether a bad faith violation of the insurance contract gives rise merely to a cause of action for breach of contract, or also to a cause of action in tort. If contractual only, count 4 in trespass must fall, including the claim for punitive damages which are not recoverable in a contract action: W. W. Coal Co. v. Pennsylvania National Mutual Cas. Co., supra. But if there is a tort cause of action, punitive damages are permissible, even though the operative facts also give rise to alternative causes of action in contract and tort: W. W. Coal Co. v. Pennsylvania National Mutual Cas. Co., supra; Spickler v. Lombardo (No. 2), 33 Somerset 340 (1977).

The traditional general principle is that the mere fact that a breach of contract is committed in bad faith or with outrageous purpose does not constitute a tort. As stated in C.J.S., Actions §47:

"In determining the choice of remedy as between an action in contract and an action in tort the source of the duty violated must be ascertained. As contractual duties proper have their origin in, and derive their vitality directly from, the assent of the parties, a mere breach of such duties does not constitute a tort, and hence if there is no liability except that arising out of a breach of a purely contractual duty, the action must be in contract, and an action in tort cannot be maintained, *even if the breach of contract be malicious.*" (Emphasis supplied.)

It should be noticed, however, that the *source* of the duty violated is decisive. If that source is con-

sensual or promissory only, creating a duty which the law recognizes as a "contract," see Thomas v. Fleck, 37 Somerset 80, 91 fn.1 (1978), then breach of the duty gives rise to a cause of action in contract only and is no tort; if, however, the source of the duty is not contractual, but is an imposition of law (for example, conversion, negligence, misrepresentation, etc.), its breach is tortious and gives rise to a cause of action in tort only. See 1 P.L.E., Action §22. As further stated in C.J.S., supra: "Conversely, the commission of a tort does not necessarily give rise to any implied promise to compensate the injured party, and for a breach of duty where there is no contractual relation either express or implied, only an action of tort can be maintained."

As the foregoing text suggests, there are some situations where both a contractual duty and a tort duty co-exist. For example, a contractual warranty is both a promise whose breach is a breach of contract, and an affirmation of fact which if false may constitute the tort of fraud or other actionable misrepresentation. See Gary v. Masterson, 38 Somerset 347 (1979); Zimmerman v. Glessner, 32 Somerset 74, 77, fn.1 (1976).[2]

In the instant case, the sole source of the duty to comply with the *express* covenants of the insurance contract is the assent of the parties, the sole remedy for breach is in contract, and there is no tort however malicious the breach, and the preliminary objections to count 4 must be sustained insofar as it seeks recovery for direct breach of those covenants.

[2] The tort of conversion may give rise also to a contractual cause of action based on an implied promise to pay for the goods taken: Halifax Area Joint School Dist. v. Chaundy, 28 D. & C. 2d 708 (1962). But that is a restitutional duty implied by law, a quasi-contractual claim, and is not based on assent of the parties: Kramer v. Madston, 38 Somerset 316 (1978).

But the averment of breach of the "implied covenant of good faith" merits further analysis in light of the covenant's source and the state of the authorities in Pennsylvania respecting tort liability for its breach.

Before examining those matters, we should first be reminded that the terms "implied covenant" and "implied contract" are ambiguities; it is important to distinguish between a contract implied in fact and a contract implied in law. As stated in Somerset Gasoline Company v. Harrington, 29 Somerset 283, 298 (1974): "A contract implied in fact is an actual contract which arises when the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." Footnote 4 to that text further explains: "A contract implied in fact must be distinguished from a quasi contract implied in law."

The distinction is further delineated in Kramer v. Madston, 38 Somerset 316, 324 (1978), where we said:

"[T]he crucial point is this: express contracts and implied contracts are true or actual contracts, whereas quasi-contracts and obligations of unjust enrichment are not. The obligations of the parties under an actual contract are consensual, based upon a promise or promises voluntarily made by the parties according to their manifested intentions and assent; the obligations of quasi-contract and unjust enrichment are imposed by the law (according to equitable notions) irrespective of and even in spite of the intentions and assent of the parties." See, also, Stahlman v. Antram, 39 Somerset 50 (1979).

It follows that in order to sustain plaintiff's 4th

count in tort, the implied obligation of good faith must be quasi contractual, that is implied in law irrespective of assent.

The concept of good faith in insurance law as the basis for a bad faith cause of action was first articulated in Pennsylvania in Cowden v. Aetna, supra, where the court held that an insurer against public liability may be liable for the entire amount of a judgment secured by a third party against the insured, regardless of policy limits, if the insurer's handling of the claim, including failure to settle, was done in such a manner as to evidence bad faith or want of due care in the insurer's discharge of its contractual duty; policy provisions giving the insurer the right of control over disposition of third party claims against the insured makes the insurer agent for the insured in such disposition. The court said at 389 Pa. 470, that "the insurer must act with the utmost good faith in disposing of claims against the latter." That was a trespass action on the theory that the breach is a tort; recovery was denied on the ground that the facts did not show bad faith. There is no discussion in the opinion on the contract-tort question and propriety of a trespass action was assumed, as is also true in Trzesniowski v. Erie Ins. Exchange, 59 D. & C. 2d 44 (1973); George v. Nationwide Mutual Ins. Co., 27 D. & C. 2d 773 (1962); and Rider v. Fidelity and Casualty Co. of New York, 26 D. & C. 2d 627 (1961). A similar claim was made in Gray v. Nationwide, supra, except that the action was brought in assumpsit. When Gray was in the Superior Court, 207 Pa. Superior Ct. 1, 214 A. 2d 634 (1965), dismissal was affirmed by a divided court (3-3). Judge Wright speaking for himself and Judge Montgomery said at p. 2: "Breach of an insurer's obligation to act in good faith and with due care in representing the

interests of the insured creates a cause of action in tort, not in assumpsit." Judge Hoffman speaking for himself and Judges Ervin and Watkins said at p. 8: "Our Supreme Court has not decided whether an insured has the right to elect between an action in contract and an action in tort. In similar cases, however, the [Supreme] Court has indicated that an action in contract is not improper." He then went on to argue his position saying at p. 9: "Even if the cause of action is in tort. . . ." On the appeal to the Supreme Court, the court approved the assumpsit action, saying at 422 Pa. 508:

"We believe that this recent case law, employing contractual terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance contract for which an action of assumpsit will lie."

The court does not state whether the breach is also a tort which may be pursued in trespass, and the authorities quoted by the court at p. 509 to the effect that the "claim is based on breach of contract and is not personal to the insured" and that the obligation is "an implied contractual warranty" are ambivalent in theory. The court in Gray also adopts the dictum in Gedeon v. State Farm, 410 Pa. 59, that the insurer by asserting in the policy the exclusive right to handle all claims against the insured "assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured."[3]

---

3. In Gray v. Nationwide, cited in the opinion, the court states (507): "Our task is to determine whether MacLatchie, the insured, has a cause of action in assumpsit or in tort against the insurer for its wrongful refusal to settle." The court's ultimate conclusion that plaintiff had a contractual cause of ac-

In Chissler v. Nationwide Ins. Co., 67 D. & C. 2d 225, 229 (1974), plaintiff brought an action in assumpsit for breach of the obligation of good faith in failing to settle the third party claim, and an alternative count in trespass for want of due care with a claim for punitive damages in the latter action. With more confidence in the meaning of the appellate decisions than we have been able to muster, the court said at p. 229: "It is settled law that an insured can sue his insurer either in trespass or in assumpsit in circumstances such as are alleged by plaintiff in her complaint." The court merely cited Gray and Cowden, both supra, as authority for the statement. The court then struck the claim for punitive damages, but only on the ground that plaintiff was insured's assignee rather than the insured himself.

Although appellate decisions are not clear on the nature of the insurer's violation of its fiduciary obligation of good faith-due care in dealing with third party claims against the insured which the policy covers, we are inclined to accept the dual nature of the cause of action for several reasons. First, the implied obligation is not consensual but is imposed by law, and is therefore quasi contractual in nature.

----

tion has led some to conclude that there is no tort, notwithstanding the fact that the court did not undertake to resolve the question. See Iron Mountain Security Storage Corp. v. American Specialty Foods, Inc., 457 F.Supp. 1158, 1169 (E.D. Pa. 1978).

In Liberty Mutual Ins. v. Davis, 412 F. 2d 475, 484 (5th Cir. 1969), the court states: "An insurer's failure to settle more closely resembles a wrong against property (the insured's pocketbook) than a tort of purely personal nature. . . . A claim against an insurer for refusal to settle cannot be fitted neatly into either tort or contract categories."

In Smith v. Transit Casualty, 281 F.Supp. 661, 668, (E.D. Texas 1968), the court recognizes bad faith refusal or neglect to settle as creating causes of action in either tort or contract.

Second, the implied duty is not merely one of good faith, but also of due care whose breach is negligence as in tort law.[4] Third, the fiduciary nature of the obligation makes its breach tortious under Restatement, 2d, Torts, §874, which provides as follows: "One standing in a fiduciay relation with another is subject to [tort] liability to the other for harm resulting from a breach of duty imposed by the relation." Finally, there are public policy reasons, more fully discussed later in this opinion, for making available to the insured the measures of damage available in tort law for violation of the bad faith-due care duty.

The instant case differs from those just discussed: here the insured does not sue for violation by the insurer of its obligation of good faith-due care in discharging its fiduciary obligation under the policy in disposing of third party claims against the insured—instead, we are dealing here with the insurer's violation of the duty in paying the insured's claims for moneys due him under the insuring covenants of the policy. Of course, the insured has a contract cause of action in assumpsit on the express covenants of the policy to pay the covered losses, the subject of counts 1 and 2 of this complaint; it is also clear in Pennsylvania that the good faith-due care duty exists as a contractual undertaking not merely with respect to claims of third parties against the insured, but also to claims of the

---

4. In Gedeon v. State Farm, cited in the opinion, Justice (now Chief Justice) Eagen, concurring, makes this interesting comment on good faith versus due care, at 410 Pa. 61: "I would base the liability of the insurer for a breach of the duty to settle on the theory of negligence using the above rules as a standard and in that way eliminate the dichotomy between bad faith and negligence with regard to the duty to settle and the duty of handling the case with ordinary care."

insured against the insurer under the policy: Diamon v. Penn Mutual, supra. Diamon is authority for plaintiff's present count 3 in assumpsit for consequential damages, but the opinion avoids the tort aspect of the problem and there is very little authority in Pennsylvania on the latter point.[5]

The primary authority for a tort cause of action

---

5. While the courts in Cowden v. Aetna and Gray v. Nationwide, both cited in the opinion, stress as the basis for the insurer's liability for bad faith or negligent handling of third party claims, the fiduciary or agency relationship arising from contractual provisions in liability policies entrusting to the insurer disposition of third party claims, and while there is no such agency relation in cases involving direct claims of the insured against insurer as in Diamon v. Penn Mutual, cited in the opinion, and the instant case, that distinction is not vital. As stated in Grant Sheet Metal Products Company v. Protection Mutual, 34 Conn. Sup. 46, 375 A. 2d 428, 429 (1977).

"The defendant argues, citing the dissent of Roth, J., in Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 581, 108 Cal. Rptr. 480, 510 P. 2d 1032, that to make the jump from good faith and fair dealing as regards third parties to such liability for first-party dealings requires a fiduciary relationship. But that is not so if sound logic dictates that the Gruenberg obligation is necessarily implicit in every insurance contract. The developing theories in this area often represent an overlapping of contract and tort law with some inevitable confusion. One approach to the problem may be an extension of compensatory and punitive damages in contract actions. This court, however, prefers to follow Gruenberg in focusing on a distinct tort cause of action."

We considered the suggestion that punitive damages be allowed in contract cases in Spickler v. Lombardo (No. 2), 33 Somerset 340, 343 (1977), as follows: "If we are to abolish the distinction between contract and tort claims as respects the propriety of punitive damages, it does not follow that punitive damages are likewise to be abolished; it might be more reasonable to allow punitive damages also in contract cases, without a count in tort, if there is outrageous conduct, although that is contrary to Restatement of Contracts section 342. See also, W. W. Coal, supra."

for bad faith refusal or negligent handling of the insured's claim against the insurer under the policy is Gruenberg v. Aetna, 9 Cal. 3d 566, 108 Cal. Rptr. 480, 510 P. 2d 1032 (1973). The heart of the California court's holding is discussed in another context in Berkebile v. Nationwide Ins. Co., 6 D. & C. 3d 243, 251-2, 34 Somerset 322, 330-1 (1977) (Shaulis, J.), as follows:

"Plaintiffs argue that there is a trend in cases to acknowledge that a tort action may lie against an insurance company for wrongful refusal to pay when based upon a showing of malice or bad faith. Plaintiffs rely on the case of Gruenberg v. Aetna Ins. Co., 108 Cal. Rptr. 480, 510 P. 2d 1032 (1973), for the proposition that punitive damages are recoverable from insurers. There, after reviewing other California cases, the California Supreme Court stated at 510 P. 2d 1037:

"'In the case before us we consider the duty of an insurer to act in good faith and fairly in handling the claim of an insured, namely a duty not to withhold unreasonably payments due under a policy. These are merely two different aspects of the same duty. That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.' See, also, e.g., Carter v. Hartford Accident & Indem. Co., 423 F. Supp. 827 (E.D. Va. 1976);

Escambia Treating Co. v. Aetna Cas. & Surety Co., 421 F. Supp. 1367 (N.D. Fla. 1976). All these cases speak of recovery *in tort.*"[6] (Emphasis in original.)

It will be noted that the California court stresses that the *source* of the good faith duty is not the contractual consensus, but a legal superimposition upon the contract, thus laying a traditional foundation for tort liability.

We think the Pennsylvania courts will not or should not be inhospitable to the cause of action for "tortious breach of insurance contract."[7] Our Supreme Court cited and followed California Supreme Court decisions in Gray v. Nationwide, supra; and in Diamon v. Penn Mutual, supra, the Superior Court placed primary reliance on Gruenberg, supra, to support liability in contract, without touching upon Gruenberg's tort concept. In D'Ambrosio v. Pennsylvania Nat. Mutual Cas. Ins. Co., 262 Pa. Superior Ct. 331, 396 A. 2d 780 (1978), the court split evenly (3-3) on the tort contract issue.

In Vallino v. Columbia Acc. & Health Ins. Co., 6 D. & C. 3d 434 (1978), in a situation comparable to that of the instant case, plaintiff sued in assumpsit

---

6. In Berkebile v. Nationwide, cited in the opinion, the court was not faced with our present problem because there plaintiff filed no trespass count for violation of the good faith-due care duty.

7. In Gruenberg v. Aetna, cited in the opinion, the term "tortious breach of contract" is used: 9 Cal. 3d 574, 510 P. 2d 1037. In McCarthy, Punitive Damages In Bad Faith Cases (1978), quoted in Jones v. State Farm, 127 Pitts. L.J. 96, 103 (1979), the author says at § 1.6: "The underlying basis for imposing tort liability on an insurer to its insured is the emerging judicial recognition of a cause of action for tortious breach of contract. As contradictory as that term may be, it is the best description of the application of a tort measure of damages to what is clearly and essentially a breach of contractual duties."

for breach of a disability income policy, and in trespass for violation of the duty to deal wth the insured in good faith claiming punitive damages. As here, the case was before the court on preliminary objections. The court (Finkelhor, J.) concluded, at p. 439, that "Pennsylvania cases do not appear to recognize a separate cause of action in tort for 'bad faith' breach of the contractual agreement," although numerous other states do so, p. 438, and sustained the demurrer to the trespass claim on the ground that "we believe that such a shift [to tort liabililty] is the prerogative of the appellate courts," at p. 442.

But in Jones v. State Farm Ins. Co., 127 Pitts. L.J. 96 (1978), decided less than five months after Vallino but before D'Ambrosio, both supra, Judge Finkelhor speaking for a three judge court made the shift to tort liability without waiting for appellate direction. That was an assumpsit action to recover no-fault benefits which the insurer had allegedly failed to pay, but plaintiff added a second count in trespass for "bad faith in failing to process the claim" p. 101, and seeking punitive damages. Defendant demurred to the second count and moved to strike the punitive damage claim, just as defendant has done here.[8] After holding that the no-fault statute does not alter or eliminate other common law causes of action, and after reviewing Gruenberg and similar decisions in other jurisdictions, the court held that a suit for violation of the "'warranty' of good faith negotiations," (104), "may be brought

---

8. Punitive damages are not recoverable in assumpsit under the no-fault statute: Berkebile v. Nationwide, cited in the opinion. Accord: Whiting v. Nationwide, 9 D. & C. 3d 789 (1979). Contra, Armour v. Concord Mutual Ins. Co., 9 D. & C. 3d 120 (1979). Compare Jones v. State Farm cited in the opinion, at fn. 23, and Karpecik v. Houck, 11 D. & C. 3d 622 (1979).

in trespass as well as assumpsit" (105), on the "principle of a tortious breach of an insurance contract" (105).[9] Thus, as stated in Gruenberg, supra,

9. The court in Jones v. State Farm, cited in the opinion, also said that "the cornerstone of the ex-contractu-ex delicto distinction raised in these proceedings is a distinction without difference," 104, and that "we fail to see the significance of the label attached to the pleading," 105. Nevertheless the court recognized in footnote 32 to its opinion the significant difference that punitive damages are claimable in trespass but not in assumpsit, as held by this court in W. W. Coal Company v. Nationwide, Spickler v. Lombardo (No. 2), and Berkebile v. Nationwide, all cited in this opinion.

There is another potentially significant difference in the measure of damages between assumpsit and trespass: allowable compensatory damages for breach of contract are measured by *foresight* (excluding consequential damages not contemplated by the parties), whereas the measure in tort includes all consequential damages whether contemplated or not, so long as actually caused by the wrongful conduct as seen by *hindsight*. See Restatement, Contracts, §330; Restatement, 2d, Torts, §435; Lyons v. Emmco, 26 Somerset 380, 381 (1971) (assumpsit); Iron Mountain v. American Specialty, cited in this opinion. In the latter case, the court said, 457 F.Supp. 1165:

"Although they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensual agreements between particular individuals. In tort actions, damages are awarded to compensate the plaintiff for all loss suffered by breach of the duty, whereas in contract actions, damages are limited by the scope of the agreement and must be foreseeable at the time the agreement is made. If a tortfeasor breaches a duty imposed by society, a monetary levy beyond that which is compensatory may be imposed against him to punish the wrongdoing and serve as a deterrent; such 'punitive damages' are not assessed for breach of mere contractual duties, however. These and other differences have characterized tort and contract as distinct forms of action, and the fact that tort rules usually provide greater advantages for plaintiffs' recoveries has led to 'more or less inevitable efforts of

(1036), breach of the good faith-due care duty implied in insurance contracts "sounds in both contract and tort." Accord: Smith v. Transit Casualty, 281 F.Supp. 661, 668 (E.D. Texas 1968); compare W. W. Coal Company v. Nationwide Mutual Cas. Co., supra, 75 D. & C. 2d at 625, 30 Somerset at 73.

---

lawyers to turn every breach of contract into a tort.' W. Prosser, Handbook of the Law of Torts §92 (4th ed. 1971); quotation from id. at 614 (footnote omitted). In this case, the difference in rules as to availability of punitive damages seems to have been a major factor prompting assertion of the tort claim since that is the only difference in the relief requested under the two counts of the counterclaim."

In some cases, this differential can have significant results. In Gruenberg v. Aetna, supra, mental distress damages were also allowed in the tort claim although they would not have likely had been allowed as foreseeable in a contract claim. Compare Meyer v. Nottger, 241 N.W. 2d 911 (Iowa 1976), where emotional distress damages were allowed in a contract action for breach of a contract to perform funeral services (foreseeable). See D'Ambrosio v. Pennsylvania National, supra.

There is a fine line drawn between the *general risk or hazard* "the foreseeability of which rendered its conduct negligent," Noon v. Knavel, 234 Pa. Superior Ct. 198, 205-6, 339 A. 2d 545 (1975), and the *particular harm* resulting from the risk or hazard negligently taken liability for which is judged by hindsight. Basically it is the distinction between negligence and causation. See Restatement, 2d, Torts §281, Comments e, f, g and h, and §435, Comment D. The statement in Makoczy v. Weaver, 33 Somerset 193 (1976), appendix 204, that: "In causes of action based on negligent conduct, the wrongdoer is ordinarily liable only for harm falling within the recognizable or foreseeable risk" must be construed in light of that distinction. A related difference between damage measures in contract and tort law is this: "In short, tort damage law is restorative and looks backward to the state of affairs immediately before the wrong was committed, whereas contract damage law (like a promise) looks forward to the state of affairs which would exist if the promise bargained for had been performed." Gary v. Masterson, supra, 38 Somerset at 382.

We agree with Gruenberg, Jones v. State Farm and with Judge Spaeth in D'Ambrosio, all supra, that there is or should be alternative contractual and tort liability of an insurer for breach of the implied obligation of good faith and due care in handling both third party claims against the insured and the direct claims of insured against insurer. Although the reasoning articulated in this opinion furnishes a sound legal ground for that conclusion, it tends to obscure the real basis for judicial creation of the implied obligation of good faith-due care, and for singling out insurance contracts in particular from other types of contracts for this special treatment. In Iron Mountain Security Storage Corp. v. American Specialty Foods, Inc., 457 F.Supp. 1158 (E.D. Pa. 1978), involving a commercial contract for repurchase of a promissory note, plaintiff sued in assumpsit for breach of contract terms and in tort for compensatory punitive damages for "bad faith or malicious breach of contract." The court pointed out that all of the known decisions recognizing such a tort were insurance policy cases and that none "has extended the tort law theory beyond the insurance context to breaches of other commercial contracts," at p. 1168. The court concluded at p. 1169:

"In summary, then, I do not believe that Pennsylvania would allow tort recovery for breach of an implied contractual duty of good faith and fair dealing where the breach occurred in an ordinary commercial contract such as the one in this case. Breach of the duty is synonymous with breach of the contract. No special circumstances are present in this case that would induce adoption of a tort theory to circumvent normal contract rules, including the rule against recovery of punitive damages. The case does not involve an insurance policy,

which might be subject to a different result, although, under the Pennsylvania cases, that result is uncertain. I hold that defendants have not stated a claim under the tort theory they advance. Accord, Myers & Watters Co. v. E. I. dePont deNemours & Co., Civil No. 76-1253 (E.D. Pa., April 25, 1978)."

In the general law of contracts, it is often said that "[g]ood faith and fair dealing are required of all parties" 17A C.J.S., Contracts §451, or that "in every contract there exists an implied covenant of good faith and fair dealing." Id. §328. But those generalities are stated more as principles of construction than as an independently enforceable obligation implied in or imposed by law. Compare Daniel B. VanCampen Corp. v. Building and Construction Trades Council of Phila., 202 Pa. Superior Ct. 118, 122, 198 A. 2d 134 (1963), quoting from 8 P.L.E., Contracts §140 (now §163); Frickert v. Deiter Bros. Fuel Co., Inc., 464 Pa. 596, 603, 347 A. 2d 701 (1975). The concept of good faith has long been given special emphasis in insurance contracts, but until Cowden v. Aetna and Gray v. Nationwide, both supra, the good faith principle was utilized to ameliorate the harshness of technical policy provisions prescribing the duties of the insured, rather than as the substantive basis for an independent tort or assumpsit cause of action by insured against insurer. See Brakeman v. Potomac Ins. Co., 472 Pa. 66, 371 A. 2d 193 (1977); Fedas v. Insurance Company of Pennsylvania, 300 Pa. 555, 559, 51 A. 2d 285 (1930); Freedman v. Fire Association of Phila., 168 Pa. 249, 254, 32 Atl. 39 (1895); Welsh v. London Assurance Corp., 151 Pa. 607, 619, 25 Atl. 142 (1892); Miller v. Nationwide (No. 2), 31 Somerset 46 (1975).

There are two basic reasons of public policy for special treatment of the insurance contract as respects the implied good faith-due care obligation. First, over more than a century of close judicial acquaintance with controversy between insured and insurer, the courts have recognized that those parties are grossly unequal antagonists, much more so than in most other contractual relationships. As stated in Miller v. Nationwide (No. 2), supra, 59: "The obligation of good faith and fair dealing underlies contract law in general, . . . and insurance contracts in particular; and in the latter, the obligation of good faith weighs heaviest upon the insurer, which is in the strongest position to call the shots in dealing with the policyholder." Insurance policies are contracts of adhesion. "A contract of adhesion is one in which one dominant party specifies the terms and the other merely *adheres* to them because he lacks bargaining power to mold them to his wishes or needs." Miller v. Nationwide, 70 D. & C. 2d 338, 345, 30 Somerset 44, 51 (1975) (Emphasis in original.)[10] This monopoly of bargaining power possessed by the insurer vis-a-vis the insured in establishing the terms of the contract extends also to negotiations in settlement of claims where the insured is also usually in a weakened

10. The concept of "adhesion" is being applied to other contractual relationships: Fuentes v. Shevin, 407 U.S. 67, 94, 92 S. Ct. 1983, 2001, 32 L.Ed. 2d 556, 578 (1972), printed form of consumers sales contract; Galligan v. Arovitch, 421 Pa. 301, 219 A. 2d 463 (1966), and Care v. Berger, 69 D. & C. 2d 434 (1975), printed form of apartment lease. The stress is on the "social importance of the type of contract involved" and the "monopoly position" of one party vis-a-vis the other: Schott v. Westinghouse Elec. Corp., 436 Pa. 279, 287, fn. 3, 259 A. 2d 443 (1969).

position because he is in the throes of loss and often pinched financially by immediate need for the insurance money (the right to which he purchased in the expectation of full and prompt payment). Disputes in settlements of indemnity insurance claims usually center upon evaluation of loss and promptness of payment. If the insurer takes full advantage of its superior bargaining position it is often easy to exploit the insured's weakness by driving a hard bargain at minimal amounts payable. Dilatory settlement tactics are also a form of exploitive economic coercion. In Miller v. Nationwide (No. 2), supra, 60, we said this on the subject of delay:

"What constitutes acting 'promptly' or without 'unreasonable delay' depends of course on the circumstances of the case. In the ordinary vehicle liability case, a delay of weeks in advising the insured of the company's position may not be unreasonable. But where the insured is a business person and the policy is for coverage of customer loss, the company may not be insensitive to the need of the insured to act promptly to remedy his customer's injury, in order to enable the insured to retain customer good will. It was or should have been apparent to defendant on September 10 that very prompt action by plaintiffs was essential to keep their customer. In such case, very little delay will be countenanced. In Isador v Security Mutual, 291 NE 2d 380 (N.Y.), the Court held that the company must be alert to the obvious need of an insured for prompt resolution of the claim against him, saying (388):

"'A triable issue of fact is presented in the present case on the issue whether defendant unreasonably delayed taking action on the negligence claim against plaintiff under circumstances where it had notice of the claim and knew or ought to have

known of economic pressure exerted for settlement . . . in such fashion as to waive the provisions of its policy against settlement by the insured without its permission in writing.'''

Secondly, the courts have seen that the coercive powers of insurers in these matters are widely used in fact. When that occurs the insured's right to recover under the policy merely what he should have been paid without suit is an inadequate remedy for him and lacks any deterrent effect upon such coercive conduct. There is a societal need for conferring upon the insured not only a contract claim for consequential damage, but also a tort cause of action for bad faith or negligent conduct of the insurer, with the right to the broader tort measure of damages including punitive damages in severely abusive cases.

The demurrer to count 4 should be overruled.

Count 4—Motion To Strike Punitive Damage Claim:

In the prior section of this opinion dealing with the sufficiency of averments of bad faith and want of due care, we summarized those averments and concluded that they were a sufficient pleading of those issues. Those same averments are now relied on in count 4 to support punitive damages and are described there as showing "a malicious and wanton disregard for the rights of plaintiff."

The latter description is, of course, not factual but conclusory: Frick v. McClelland, 384 Pa. 597, 600, 122 A. 2d 43 (1956); Nernberg v. Somerset Rural Elec. Coop., 35 Somerset 111 (1978). While the allegations may support a want of good faith and due care, they do not necessarily support a punitive damage claim which requires outrageous conduct,

that is, "acts done with a bad motive or a reckless indifference to the interests of others." W. W. Coal Company v. Pennsylvania National Mutual Cas. Co., supra; Restatement, 2d, Torts, §908 and Comment b thereto. Bad faith conduct is not necessarily outrageous conduct. See Gruenberg v. Aetna, supra, 9 Cal. 3d 579, 580, 510 P. 2d 1041-1042. Even fraud is not necessarily outrageous conduct in all circumstances; hardly anyone would regard as outrageous the conduct of a parent who fraudulently obtained food for a starving infant. To be outrageous the conduct must be such a severe departure from prevailing moral values in terms of the evilness of motive or recklessness of the disregard of the victim's rights and interests, such an extravagant, shocking, anti-social and extremely offensive misdoing, as provokes instantly a cry of abhorrence. No such reaction stems from this pleading and the claim for punitive damages must be stricken. Compare W. W. Coal Company v. Pennsylvania National Mutual Cas. Co., supra; Spickler v. Lombardo (No. 1), 32 Somerset 16, 32 (1976); Vallino v. Columbia, supra, at 444; Lane v. Government Employees Insurance Company, 6 D. & C. 3d 51 (1977); Jones v. State Farm, supra, 105.

Proof of outrageous conduct, like proof of bad faith or fraud, must establish the conclusion by clear, precise and convincing evidence: Cowden v. Aetna, supra, 472. The pleading of such matters must be of equal dignity: Sneiderman v. Kahn, 350 Pa. 496, 39 A. 2d 608 (1944); Baltzer v. Shanksville-Stonycreek Bd. of Dir., 27 Somerset 161, 168 (1972). The higher degree of precision and particularity in pleading is especially essential in a punitive damages claim which opens the door to

discovery and proof of defendant's financial ability and condition, which should not be permitted without crystal clear entitlement in the pleading: Spickler v. Lombardo (No. 2), 33 Somerset 340 (1977).

## ORDER

Now, March 18, 1980, defendants' preliminary objections to the complaint are ruled upon as follows: the motion to strike count 3 of the complaint is denied, and the demurrers to counts 3 and 4 of the complaint are overruled. The motion to strike that portion of count 4 of the complaint seeking punitive damages is granted and the same is stricken. Defendants are allowed 30 days to answer the complaint.