IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Eagleview Corporate Center Association | : |
| | : |
| | : |
| v. | : No. 547 C.D. 2016 |
| | : Argued: October 20, 2016 |
| Citadel Federal Credit Union, | : |
| Appellant | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: December 2, 2016

Citadel Federal Credit Union (Citadel) appeals an order of the Court of Common Pleas of Chester County (trial court) directing it to screen its roof-mounted air-conditioning equipment. The trial court also ordered Citadel to reimburse Eagleview Corporate Center Association (Association) for the attorneys' fees and costs that it incurred to enforce a prior order of the trial court. Citadel contends that the trial court erred. It notes, first, that the prior order, which granted Citadel's request for a declaration that its air-conditioning equipment could be placed on the roof, did not order Citadel to do anything. Citadel further notes that the trial court specifically found in the prior proceeding that the visual intrusion of Citadel's equipment was *de minimis*, suggesting that separate screening was neither required nor necessary. We reverse and remand.

## Background

In April 2010, Citadel purchased an office building located in the Eagleview Corporate Center, which center was developed pursuant to the Uniform Planned Community Act, 68 Pa. C.S. §§5101-5414. An "Amended and Restated

Declaration of Easements and Protective Covenants and Restrictions for the Center" (Declaration) imposes duties upon, and creates rights in, property owners in the Center. The Association is charged with the management of the Eagleview Corporate Center and enforcement of the covenants in the Declaration.

In September of 2010, Citadel installed air-conditioning condensing units that were necessary to cool its data processing equipment located inside the building. The Association claimed that the equipment violated Article VIII, Section 8.3(c) of the Declaration, which states as follows:

> (c) <u>Exterior Equipment.</u> *Exterior mechanical and electrical equipment*, including, without limitation, air conditioning equipment, air handling equipment, transformers, transclosures, pump houses, communication towers, vents and fans, *whether mounted on the roof or walls of any building or on the ground, shall be placed or screened so that the predominant design lines of the building or structure continue without visual distraction* or interruption. If any such equipment is not screened from the view of any interior roadway, such equipment shall be separately screened as approved by the Committee. The height of any such screening shall be at least equal to the height of the equipment to be screened.

Declaration, Art. VIII, §8.3(c) (emphasis added); Reproduced Record at 63a-64a (R.R. ___). The Association contended that Citadel's equipment presented a "visual distraction" and demanded that Citadel remove the equipment and place it on the ground. Citadel refused.

In February of 2011, the Association initiated a suit in equity against Citadel seeking to have Citadel remove the equipment and to be enjoined from making any future alteration to its building without Association approval. Citadel counterclaimed, seeking a declaratory judgment that the Association had no

authority under the Declaration to require the placement of air conditioning equipment on the ground.

On January 23, 2014, after a bench trial, the trial court denied the Association's request for an injunction because it did not establish the requisite elements for an injunction. The Association did not establish a clear right to an injunction because the Declaration authorized the installation of equipment on the roof. Because the visual impact of the equipment was *de minimis*, the Association did not establish harm, let alone that greater harm would result from the denial of an injunction than from its grant.

On these factual findings and legal conclusions, the trial court entered an order that stated as follows:

1. Plaintiff's Petition for Permanent Injunction is DENIED;

2. Defendant's request for Declaratory Judgment is GRANTED;

3. Declaratory Judgment is entered in favor of Defendant and against Plaintiff, and consistent therewith, Defendant's existing roof-mounted mechanical equipment is hereby authorized and approved and is subject to the screening requirement found in the Declaration at Article VIII, §8.3(c);

4. Defendant's request for counsel fees is DENIED.

Trial Court op., 1/23/2014, at 10.

In May 2014, the Association asked Citadel about its plans for screening the rooftop equipment. When Citadel declined to discuss the matter, the Association filed a "petition to compel" Citadel's compliance with the trial court's January 23, 2014, order. In connection therewith, the Association requested

3

attorney fees and costs. The trial court conducted a hearing on January 7, 2016, at which both parties presented evidence.

The Association presented the testimony of Lance Hillegas, the vice-president of design at the Hankin Group, who provides consulting services to the Association's Architectural Control Committee (Committee). Hillegas testified that after the entry of the January 23, 2014, order, Citadel did not send him proposed plans for screening its rooftop equipment. Carl Holden, an architect engaged by the Association to consider screening options for Citadel's rooftop equipment, also testified. Working with a structural engineer and a general contractor, Holden came up with several options with varying costs depending on whether the rooftop equipment remained in its current location or would be relocated. Were the rooftop equipment to be relocated, the cost would range between $169,081 and $176,021, depending on the type of screen. Were the rooftop equipment to remain in its current location, the cost would range between $196,000 and $204,000.

Citadel presented the testimony of its architect, Lee Casaccio, who generally agreed with Holden's cost estimates. However, he was uncertain about the cost to relocate the equipment, noting that it could be significant because of the need to re-route electrical and other utility services inside the building. He doubted that "investing $200,000 would be a prudent decision" because the visual impact of the screening "could be greater than the *de minimis* impact of the individual units that are there now." Notes of Testimony, 1/7/2016, at 83-85 (N.T. ___); R.R. 1265a-67a.

On March 8, 2016, the trial court granted the Association's petition to compel. The trial court was troubled that Citadel had adopted a "reversal of its

4

trial position" by asserting that the equipment should not be screened. Trial Court op., 3/8/2016, at 5. Accordingly, the trial court entered the following order:

> 1. Defendant is directed to comply with the January 14, 2014 Order in that the Equipment *is subject to* the screening requirements of §8.3(c) of the Declaration and must be separately screened as approved by the Architectural Control Committee consistent with Exhibits P-11, P-12 and D-1, and
>
> 2. Defendant shall pay Plaintiff's attorneys' fees and costs incurred in enforcing the screening requirement set out in §8.3(c) of the Declaration and as determined to be applicable to the Equipment in the January 24, 2014[,] Order, with a hearing to assess fees and costs to be scheduled.
>
> It is further ORDERED that Defendant's cross-petition to strike Plaintiff's petition and for counsel fees is DENIED.

Trial Court op., 3/8/2016, at 6. Citadel appealed to this Court.[1]

On appeal,[2] Citadel raises four issues. First, it contends that the trial court erred because the trial court's declaratory judgment in favor of Citadel did not order it to take any action. Second, it contends that the trial court erred and abused its discretion because in the initial proceeding neither party sought an order to require screening. Third, the trial court erred in concluding that Citadel's pre-

---

[1] Generally, this Court does not hear appeals in civil matters involving two private parties. Because the Association has not objected to our jurisdiction, it is perfected. 42 Pa. C.S. §704(a); Pa. R.A.P. 741(a) ("The failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the last day under these rules for the filing of the record shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court.").

[2] "The scope of review by [this Court] of a court of common pleas sitting in equity is severely restricted.... We will not reverse if apparently reasonable grounds exist for the relief ordered and no erroneous or inapplicable rules of law were relied on." *Jackson v. Hendrick,* 456 A.2d 229, 233 (Pa. Cmwlth. 1983) (citations omitted).

trial settlement offer for separate screening of equipment was part of the Association's request for relief in the initial proceeding. Fourth, the trial court erred in denying Citadel's request for attorney fees and awarding them to the Association. The trial court lacked authorization in statute, in contract or in the Declaration that set up the planned development.

## I. Petition to Compel

In its first issue, Citadel contends that the trial court lacked jurisdiction over the Association's petition to compel Citadel to comply with the order of January 23, 2014, because that order did not require any action by Citadel. In support, Citadel offers several arguments.

Citadel first contends that the Association's petition to compel was actually a petition to modify the trial court's order of January 23, 2014. As such, the Association's petition was untimely. The Association responds, however, that it did not seek to modify the order of January 23, 2014, but only to enforce it.

Section 5505 of the Judicial Code authorizes a trial court to modify or rescind an order, so long as it does so within 30 days of the order's issuance. 42 Pa. C.S. §5505.[3] The trial court's order of March 8, 2016, was far too late to modify its order of January 23, 2014. However, the trial court did not amend its order of January 23, 2014; rather, it issued a new order. The question, then, is

---

[3] Section 5505 states as follows:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

42 Pa. C.S. §5505.

6

whether the trial court's order of January 23, 2014, ordered Citadel to install screening, as asserted by the Association and denied by Citadel.

> In its injunction action, the Association requested an order:

> a. [E]njoining Defendant from all further construction, alteration or improvements of any nature at the Property until Defendant has obtained approval for same from Plaintiff consistent with the requirements set out in the Declaration; and

> b. [D]irecting Defendant to remove all exterior equipment placed or installed on the rooftop at the Property within 5 days.

Association Petition for Injunction at 2; R.R. 219a. The Association requested removal of the equipment, not its screening. The trial court "DENIED" the Association's "Petition for Permanent Injunction."[4] Trial Court op., 1/23/2014, at 10. On the other hand, it "GRANTED" Citadel's "request for Declaratory Judgment." *Id.* The order then stated:

> 3. Declaratory Judgment is entered in favor of Defendant and against Plaintiff, and consistent therewith, Defendant's *existing roof-mounted mechanical equipment is hereby authorized and approved and is subject to the screening requirement found in the Declaration at Article VIII, §8.3(c)*[.]

*Id*. (emphasis added). In short, the trial court "approved" Citadel's equipment because it was "authorized" in Section 8.3(c) of the Declaration and, as such, must be screened or placed so as not to be visually distracting under Article VIII, §8.3(c) of the Declaration. *Id.*

---

[4] An injunction is a "court order that can prohibit or command virtually any type of action." *Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1144 (Pa. Cmwlth. 2008).

7

A declaratory judgment declares the rights, status, and other legal relations "whether or not further relief is or could be claimed." 42 Pa. C.S. §7532.[5] It has been observed that "[d]eclaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status or other relation." *Doe v. Johns-Manville Corporation*, 471 A.2d 1252, 1254 (Pa. Super. 1984). Stated otherwise, "[t]he purpose of awarding declaratory relief is to finally settle and make certain the rights or legal status of parties." *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 519 (Pa. Super. 1992), *appeal denied,* 637 A.2d 285 (Pa. 1993), *cert. denied,* 513 U.S. 1112 (1995). A declaratory judgment, unlike an injunction, does not order a party to act. This is so because "the distinctive characteristic of the declaratory judgment is that the declaration stands by itself; that is to say, no executory process follows as of course." *Petition of Kariher*, 131 A. 265, 268 (Pa. 1925).

The trial court's order of January 23, 2014, settled the legal status of the air conditioning equipment Citadel installed on its roof. Consistent with the contours of a declaratory judgment, the trial court did not order action by Citadel or by the Association.[6]

---

[5] The Declaratory Judgments Act states, in relevant part, as follows:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa. C.S. §7532.

[6] The trial court could have issued an injunction narrower than the one requested by the Association; indeed, injunctions should be drawn narrowly. *Big Bass Lake Community Association v. Warren*, 23 A.3d 619, 626 (Pa. Cmwlth. 2011) (holding that where the essential prerequisites of a permanent injunction are satisfied, the court must narrowly tailor its remedy to

**(Footnote continued on the next page . . . )**

It is beyond cavil that a court of law may enforce its orders. Our Supreme Court has explained that "[w]here there is an unimpeachable final decree, contemplating the performance of a series of acts, the proceedings to enforce compliance with that decree must be through that proceeding." *Advanced Management Research, Inc. v. Emanuel*, 266 A.2d 673, 676 (Pa. 1970) (quotation omitted). The order of January 23, 2014, was not such a decree. It did not order Citadel to perform a series of acts. It did not order the Association's Architectural Review Committee to approve Citadel's screening proposal. Nor did it establish a timetable for the implementation of such directives.

Section 8.3(c) of the Declaration requires property owners to place or screen equipment so that it does not distract from the building's appearance. Further, equipment must be placed in a way that it is "screened from the view from any interior roadway." R.R. 64a. If placement does not meet this test, then the equipment must be "separately screened as approved by the Committee." *Id.* The trial court's order did not use the term "separately screened as approved by the [Architectural Control] Committee," as it is characterized by the Association.[7] Regardless, the trial court did not order action either by Citadel or by the Association.

---

**(continued . . . )**
abate the harm). Here, the trial court held that the Association did not meet the prerequisites for an injunction.

[7] In its petition to compel, the Association requested the trial court to enter an order:

> (1) Compelling Defendant to comply with [the] January 23, 2014 Order in that the Equipment *is* subject to the screen requirement of Section 8.3(c) of the Declaration *and must be separately screened as approved by the Architectural Control Committee*[.]

Petition to Compel, at 5; R.R. 1107a (emphasis added).

9

Because the trial court's order of January 23, 2014, did not direct Citadel to install screening, there was no directive for the Association to "compel." However, the Association was not left without a remedy. The Association could have initiated an injunction action against Citadel to enforce the covenants in the Declaration and used the trial court's declaratory judgment to its advantage. However, because the January 23, 2014, order did not order action, the Association's petition to compel lacked a foundation. Simply, it was premature.

## II. Screening Order

Citadel also contends that the trial court lacked authority to order Citadel to screen its equipment. Neither the Association nor Citadel ever requested this relief in the initial proceeding, and pre-trial settlement proposals are irrelevant. The Association responds that Citadel's counterclaim made screening an issue in the proceeding, and every witness at the trial in the prior proceeding testified that the equipment could be seen from at least one interior roadway.

The Association requested a permanent injunction to order Citadel to remove the equipment from its roof. In its counterclaim, Citadel requested approval "to install screening of the Exterior Equipment consistent with the predominant design lines of the building in accordance with Section 8.3(c) of the Declaration." Citadel Counterclaim, ¶53; R.R. 234a. Citadel sought declaratory judgment because

> [a]n actual dispute and controversy exists between Citadel and the Association with respect to: (1) whether the Association abused and exceeded its authority by denying Citadel's request for approval of the Exterior Equipment; and (2) whether Citadel's request for approval of the Exterior Equipment should be approved based upon the plans and specifications from Casaccio Architects and drawings SD-43, SD57 and SD58 which accompanied counsel's letter of January 31, 2011

10

> attached to Plaintiff's Complaint as Exhibit "I" and in accordance with the relevant provisions of the Declaration and the Act.

Citadel Counterclaim, ¶75; R.R. 237a. The plans referenced by Citadel were schematics showing screening of the rooftop equipment. Exhibits SD-43, SD-57 and SD-58; R.R. 195a-99a, 237a-38a.

As noted, Section 8.3(c) of the Declaration provides that exterior equipment "shall be placed *or screened so that the predominant design lines of the building or structure continue without visual distraction or interruption*." Declaration, Art. VIII, §8.3(c); R.R. 63a-64a (emphasis added). The goal is that exterior equipment should not distract from the design of the building. If equipment "is not screened from the view from any interior roadway" by reason of its placement, then it must be separately screened. *Id.*

Citadel contends that the screening ordered by the trial court distracts from the building design and, thus, does not meet the standard in Article VIII, Section 8.3(c) of the Declaration. Although the equipment can be seen, with difficulty, from one interior roadway, it is, as the trial court found, "*de minimis.*" In other words, Citadel argues that the screening will create a visual distraction while the equipment itself is barely noticeable. Citadel also contends that screening is simply inappropriate because the record shows that numerous buildings in the Eagleview Corporate Center have equipment on their roofs that can be seen from multiple points of view. By contrast, Citadel's equipment cannot be seen, except with determination.

In light of our holding that the Association's petition to compel was improvidently filed, it is not necessary to rule on the merits of the trial court's order of March 8, 2016. We decline to do so.

11

## III. Equitable Estoppel

Citadel argues that the Association is forever estopped from pursuing separate screening because it had informed Citadel that screening the rooftop equipment was unacceptable and then filed a lawsuit to compel Citadel to remove the equipment on its rooftop. Citadel relied on the Association's statements that separate screening of the rooftop equipment was unacceptable. Indeed, Citadel incurred substantial costs and legal fees associated with the Association's litigation. Citadel argues that, under the doctrine of equitable estoppel, the Association's reversal of its position, to Citadel's detriment, bars the Association from now seeking separate screening. The Association responds that the doctrine of equitable estoppel has no application here because it did not make a promise on which Citadel relied.

"[E]quitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which lead another to rely justifiably thereon to his own injury or detriment, may be enforced in equity." *Novelty Knitting Mills, Inc. v. Siskind,* 457 A.2d 502, 503 (Pa. 1983). The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement. Our Supreme Court has explained:

> The inducement may be words or conduct and the acts that are induced may be by commission or forbearance *provided that a change in condition results* causing disadvantage to the one induced.

*Id.* at 503-04 (emphasis added). "[T]he burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence." *Blofsen v. Cutaiar*, 333 A.2d 841, 844 (Pa. 1975).

12

The trial court did not find that Citadel was induced to abstain from screening its equipment based upon a promise, formal or informal, from the Association. Citadel characterizes the Association's rejection of its proposal as a "promise" that Citadel would not be required to screen the equipment. Again, to the extent Citadel is setting up a future defense, its equitable estoppel claim is premature.

## IV. Attorney Fees and Costs

In its final issue, Citadel argues that although the Association sought attorney fees and costs in its petition, it did not request them at the time of the hearing on January 7, 2016, or in its hearing memorandum. Thus, it waived its right to fees and costs. Citadel further argues that neither statute nor the Declaration authorizes attorney fees. The Association responds that it could not request attorney fees until it prevailed and, further, these fees are authorized by the Declaration.

Section 12.3 of the Declaration provides:

ENFORCEMENT. The Association and/or Declarant shall have the right to enforce the covenants, restrictions and development standards set out in this Declaration and any subsequent amendment to this Declaration by an appropriate action at law or equity. *In any such action, the Association and/or Declarant, as the case may be, may seek to either restrain a violation and/or to recover damages. If the Association's enforcement action is successful, the Association shall be entitled to recover from the losing party all costs incurred by the Association's prosecuting the violation, including, without limitation, all attorney's fees and costs.* The Association and/or Declarant shall have the right to levy any amount that becomes due under this Section as an Assessment against the violating party. The failure of the Association and/or Declarant to enforce any covenant, restrictions or development standard shall in no event be deemed a waiver of the right to do so thereafter.

13

R.R. 1415a (emphasis added).[8]  In short, Section 12.3 of the Declaration allows the Association to restrain a violation of the Declaration.  Where the Association takes legal action to restrain a violation and is successful, it may recover costs and attorney fees.

Citadel argues that Section 12.3 authorizes the recovery of attorney fees to enforce the Association's Declaration but not to enforce a court order.  We disagree with Citadel's narrow construction of Section 12.3 of the Declaration.  Any action instituted to correct a violation of the covenants in the Declaration triggers Section 12.3.  However, because we reverse the trial court's order, its award of attorney fees to the Association must be set aside.

Lastly, Citadel argues that the trial court erred in not granting its request for attorney fees.  Section 2503(9) of the Judicial Code authorizes the imposition of attorney fees where "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."  42 Pa. C.S. §2503(9).  Our Supreme Court has set forth the factors to be considered in considering whether litigation was commenced arbitrarily, vexatiously or in bad faith:

> The statutory provision at 42 Pa. C.S. §2503(9) expressly permits a trial court to award reasonable counsel fees to a litigant when, *inter alia,* that litigant's opponent initiated the action arbitrarily, vexatiously *or* in bad faith.  [citation omitted].  An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature. *Bucks County Board of Supervisors v. Gonzales,* 158 Pa. Cmwlth. 664, 670–71, 632 A.2d 1353, 1356 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). *Accord Black's Law Dictionary* 104 (6th ed., reprinted 1993).

---

[8] This section was added to the Declaration in June 2011, prior to the filing of the Association's petition in June 2014.

> An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance. *Id.; Black's Law Dictionary, supra,* at 1565. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty or corruption. *Frick v. McClelland,* 384 Pa. 597, 600, 122 A.2d 43, 45 (1956) (*quoting McNair's Petition,* 324 Pa. 48, 187 A. 498 (1936)); *Bucks County Board of Supervisors, supra,* 158 Pa. Cmwlth. at 670–71, 632 A.2d at 1356; *Black's Law Dictionary, supra,* at 139.

*Berg v. Georgetown Builders, Inc.,* 822 A.2d 810, 816 (Pa. Super. 2003) (citing *Thunberg v. Strause,* 682 A.2d 295, 299–300 (Pa. 1996)). In short, a high burden falls upon the party seeking to show that litigation was instituted in bad faith, arbitrarily and for vexatious purposes.

The trial court denied Citadel's request for attorney fees without addressing any of Citadel's contentions in support thereof. Given our reversal, we are constrained to remand the matter of Citadel's request for attorney fees in defending against the Association's "petition to compel" to the trial court to decide.

### Conclusion

For all of the above-stated reasons, we reverse the trial court's order of March 8, 2016, and remand the matter of Citadel's claim for attorney fees.

_____
MARY HANNAH LEAVITT, President Judge

Judge Hearthway did not participate in the decision in this case.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eagleview Corporate Center       :
Association                         :
                                 :
          v.                 : No. 547 C.D. 2016
                                 :
Citadel Federal Credit Union,   :
             Appellant     :

# **O R D E R**

AND NOW, this 2nd day of December, 2016, the order of the Court of Common Pleas of Chester County, dated March 8, 2016, in the above-captioned matter is REVERSED and this matter is REMANDED for further proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

_____

MARY HANNAH LEAVITT, President Judge