# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Education
Association,
                           Petitioner

      v.

Public School Employees'
Retirement Board,
                           Respondent

    : : : : : : : : : : :

No. 199 M.D. 2021
Argued: May 16, 2022

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                  **HONORABLE ANNE E. COVEY,** Judge
                  **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**      **FILED: July 21, 2022**

Presently before the Court are the preliminary objections (POs) of the Public School Employees' Retirement Board (PSERB) and Intervenor Pennsylvania School Boards Association, Inc. (PSBA) to the Amended Petition for Review in the Nature of a Complaint Seeking Declaratory Relief (Amended Petition) filed by the Pennsylvania State Education Association (PSEA). In its Amended Petition, PSEA seeks declarations that (1) a resolution passed by PSERB on March 5, 2021, regarding how PSERB would apply Section 8327.1 of the Public School Employees' Retirement Code (Code), 24 Pa.C.S. § 8327.1, to certain circumstances (Resolution) was *ultra vires*; and (2) Section 8327.1 of the Code applies to the removal of public school employees when work is outsourced to private entities or when public schools are converted to charter schools. In its POs, PSERB argues that PSEA lacks standing to bring this action and that PSEA's claim relating to charter school conversions is

not ripe for judicial review.  PSBA similarly asserts in its POs that PSEA lacks standing, that PSEA has no private right of action to enforce Section 8327.1, and that PSEA fails to state a claim upon which relief can be granted.  After careful review, we sustain the POs related to PSEA's lack of standing, dismiss the Amended Petition on that basis, and dismiss the remaining POs as moot.

## I. BACKGROUND

The General Assembly created PSERB to implement provisions of the Code. (Amended (Am.) Petition at 1.)  In 2019, the General Assembly amended the Code by adding Section 8327.1,[1] which states, in relevant part:

> **(a) General rule.--**A nonparticipating employer is liable to the [Public School Employees' Retirement System (PSERS or System)] for withdrawal liability in the amount determined under subsection (c). A nonparticipating employer is an employer that is determined by the board to have ceased:
>
> (1) covered operations under the [S]ystem; or
>
> (2) to have an obligation to contribute under the [S]ystem for all or any of the employer's school employees but continues covered operations.
>
> **(b) Determination.--**An employer shall, within the time prescribed by the board in a written request, furnish such information as the board deems necessary to administer this section and to determine whether an employer is a nonparticipating employer.  If the board determines that an employer is a nonparticipating employer, the board shall:
>
> (1) determine the nonparticipation date;
>
> (2) determine the amount of the employer's withdrawal liability;
>
> (3) notify the employer of the amount of the withdrawal liability; and
>
> (4) collect the amount of the withdrawal liability.

---

[1] Added by Section 3 of the Act of July 2, 2019, P.L. 434, No. 72.

24 Pa.C.S. § 8327.1(a), (b). PSERB has described Section 8327.1 as having been "designed to relieve the additional funding burden on the remaining employers" when an employer withdraws all or part of its workforce from the System. (Am. Petition ¶ 12.) Previously, when an employer withdrew employees from the System, "the unfunded liability attributed to those former System members . . . , [wa]s left behind to be paid by those [employers] who remain[ed] in the System." (*Id.* at 2.) Section 8327.1 establishes a formula for calculating an employer's withdrawal liability when it withdraws all or part of its employees from the System and directs PSERB to calculate and collect this liability. (*Id.*) Section 8327.1 became effective on September 3, 2019.

Over a year after Section 8327.1's effective date, PSERB posted "Information on Withdrawal Liability" on its website.[2] (Am. Petition ¶ 12.) Thereafter, on March 5, 2021, PSERB adopted the Resolution, which stated:

---

[2] The post on the website stated:

Effective September of 2019, Act 72 of 2019 requires PSERS to calculate and collect a withdrawing employer's unfunded retirement benefit liabilities, i.e., the employer's "withdrawal liability." Prior to September 2019, when an employer terminated its participation in PSERS, for all or some of its employees, that employer's share of the [S]ystem's unfunded retirement benefit liability was re-allocated to the remaining employers. Such withdrawals, under a cost-sharing multiple employer plan like PSERS, resulted in an increased funding obligation for the remaining employers. The withdrawal liability is designed to relieve the additional funding burden on the remaining employers.

Under the [Code], an employer is deemed to withdraw from PSERS when it ceases covered operations under the [S]ystem or ceases to have an obligation to contribute under the [S]ystem for all or any of [] its employees but continues covered operations. Thus, an employer will be responsible for paying a withdrawal liability when, for example, it permanently closes all operations or creates an alternate retirement plan to cover some or all new employees. The calculation and payment of the withdrawal liability differs based on whether the employer is ceasing

3

RESOLVED that [ PSERB] . . . directs the . . . System [] staff to perform an outreach to relevant organizations to elicit input and feedback and to research and prepare a report for the Board assessing the applicability of Section 8327.1 of the . . . Code to outsourcing scenarios prior to applying the provision of Section 8327.1 to such scenarios.

**In the interim, no action will be taken by [the System] regarding withdrawal liability as it pertains to outsourcing until further policy is approved by [PSERB] and by legislation.**

(*Id.* ¶ 13; Exhibit A (emphasis in original).)

On August 26, 2021, PSEA filed a Petition for Review seeking declaratory judgment under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, on two grounds: (1) that the Resolution was *ultra vires*; and (2) "that Section 8327.1 applies to the removal of public[]school employees from the System when school employee work is outsourced (subcontracted) to private entities or when district schools are converted to charter schools." (*Id.* at 2-3.) PSEA asserts that these declarations would "not require [PSERB] to calculate withdrawal liability prior to employees being removed from the System," but would

> simply provide that, pursuant to Section 8327.1 . . . , a penalty will be assessed when members are removed from the system due to charter conversion or subcontracting so that employers and unions may implement their obligations under the Public Employe Relations Act

---

operations entirely or continuing participation in PSERS for some employees, but not all. For a complete withdrawal, a lump sum amount is due PSERS. For a partial withdrawal, the amount owed may be paid over time.
. . . .
If you are considering closing a school, creating an alternate retirement plan, or in any other way limiting PSERS membership for employees, you should contact the PSERS Employer Service Center for more information.

(Am. Petition ¶ 12 (citing Employer News Item, published Dec. 11, 2020, available at https://www.psers.pa.gov/Employers/pages/EmployerNewsArchive.aspx (last visited July 20, 2022)) (alterations in original).)

4

[(PERA),[3]] and the Public School Code Financial Recovery Act [(Recovery Act).[4]]

(*Id.* at 3.)

In support of its requested relief, PSEA asserts that "[u]nder Pennsylvania labor law, subcontracting the work of a bargaining unit is a mandatory subject of bargaining." (*Id.* ¶ 16 (citing *Pa. Lab. Rels. Bd. v. Mars Area Sch. Dist.*, 389 A.2d 1073, 1075 (Pa. 1978); *Upper Moreland Twp. Sch. Dist. v. Pa. Lab. Rels. Bd.*, 695 A.2d 904, 909 (Pa. Cmwlth. 1997)).) PSEA contends that school districts, contemplating subcontracting for economic reasons, commit unfair labor practices "if [they] do[] not clearly advise the union of the projected savings associated with the subcontract and provide the union with an opportunity to prevent the subcontracting by matching those savings." (*Id.* ¶ 17 (citing *Morrisville Sch. Dist. v. Pa. Lab. Rels. Bd.*, 687 A.2d 5, 8 (Pa. Cmwlth. 1997)).) PSEA argues that, unless school district employers and unions representing school district employees know the amount of withdrawal liability that will be imposed when the school district removes members from the System due to subcontracting or converting to charter schools, "school districts and unions will not be able to fulfill their obligations under PERA." (*Id.* ¶ 18.) PSEA points to three of its local union affiliates that have been "aggrieved by [PSERB's] lack of action on Section 8327.1" because subcontracting decisions were made, or are being contemplated, without consideration of the withdrawal liability related to those decisions. (*Id.* ¶ 15.)

Specifically, PSEA asserts that the Pocono Mountain Education Support Professionals' Association, PSEA/NEA, the Shikellamy Education Support Professionals' Association, PSEA/NEA, and the Port Allegany Education Support

---

[3] Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. §§ 1101.101-1101.2301.
[4] 24 Pa.C.S. §§ 6-601-A - 6-695-A.

Professionals' Association, PSEA/NEA (Local Unions) were, or will be, harmed by PSERB's refusal to apply Section 8327.1 to subcontracting scenarios. (*Id.* ¶¶ 15, 28, 38, 46.) Each of these Local Unions has a collective bargaining agreement with their respective school districts, and, in renegotiating those contracts, each school district's school board investigated subcontracting bargaining unit work, but without factoring in what its withdrawal liability would be. Ultimately, the school boards voted to subcontract or outsource certain positions, or have proposed to do so, resulting in the furlough, or potential furlough, of employees. (*Id.* ¶¶ 20, 22-24, 30-32, 34, 40-41, 43.) However, because PSERB refuses to implement Section 8327.1, PSEA asserts Local Unions were unable to "fulfill [their] legal obligation to bargain over the subcontracting" of the positions, (*id.* ¶¶ 28, 38, 46), as they "could not have known" or could not have predicted "the economic impact of the subcontracting without knowing whether [the school districts would] be required to pay to fund [their] withdrawal liability." (*Id.* ¶¶ 28, 38, 46.)

PSEA also alleges that the Chester Upland School District (Chester Upland), a school district in financial distress pursuant to the Recovery Act, and its receiver are considering converting its public schools to charter schools to save money. (*Id.* ¶ 50.) PSEA avers that due to PSERB's failure to notify Chester Upland whether Section 8327.1 "will apply in the event public schools are converted to charter schools," Chester Upland and its receiver "cannot predict the true cost of such a conversion or determine whether the conversion results in overall financial savings," which is required by the Recovery Act to approve a charter school conversion. (*Id.* ¶ 51.) If withdrawal liability is considered, PSEA argues, Chester Upland "would not be able to convert public schools to charter schools in compliance with the []

Recovery Act because" it would not lead to financial savings, and, thus, the jobs of PSEA members would not be at imminent risk. (*Id.* ¶¶ 52-53.)

Based on these allegations, PSEA asserts two counts. In count I, PSEA seeks a declaration that the Resolution is *ultra vires* because Section 8327.1 uses the word "shall" in reference to PSERB's obligations and PSERB has no power or "authority to suspend implementation of an existing statutory mandate." (*Id.* ¶¶ 59-60, 62.) Further, PSEA asserts that PSERB has no authority to direct the General Assembly to act or suspend the implementation of a statutory mandate "until further policy is approved . . . by legislation." (*Id.* ¶ 63 (quoting the Resolution).) In count II, PSEA seeks a declaration that school districts that subcontract bargaining unit work or convert their public schools to charter schools fit within the definition of a "nonparticipating employer" set forth in Section 8327.1. (*Id.* ¶¶ 68, 71.) PSEA maintains that declaratory judgment is appropriate because, "[w]ithout certainty as to whether Section 8327.1 . . . applies" to charter school conversions, "PSEA members are at imminent risk of losing their public employment[,] the [] Recovery Act cannot be fully implemented[,] and PSEA will lose members." (*Id.* ¶ 70.) Additionally, PSEA asserts that because "the application of Section 8327.1 . . . will lead to costs [to school districts], unions risk violating Section 1201(b)(3) of PERA[, 43 P.S. § 1101.1202(b)(3),] when they bargain over subcontracting/outsourcing without knowing whether Section 8237.1 applies" in this context. (*Id.* ¶ 73.)

PSERB and PSBA filed POs challenging PSEA's standing to bring this action because PSEA, its members, and its local affiliates are not aggrieved by the challenged conduct. Additionally, PSERB argues that the claims based on the potential charter school conversion of Chester Upland are not ripe because such conversion may not ever happen. Finally, PSBA argues that PSEA does not have a

private right of action to enforce Section 8327.1 because that provision does not authorize such actions, and PSEA has failed to state a legally sufficient claim. PSEA has filed answers to the POs, arguing it has standing, its claims are ripe, it is not asserting a private action to enforce Section 8327.1, and it has stated a claim upon which relief may be granted. The parties have filed briefs in support of their respective positions, and the POs are now ready for disposition.

## II. DISCUSSION

PSEA has filed this declaratory judgment action, which is used to "declare[] the rights, status, and other legal relations 'whether or not further relief is or could be claimed.'" *Eagleview Corp. Ctr. Ass'n v. Citadel Fed. Credit Union*, 150 A.3d 1024, 1029 (Pa. Cmwlth. 2016) (quoting Section 7532 of the Declaratory Judgments Act, 42 Pa.C.S. § 7532). "The purpose of awarding declaratory relief is to finally settle and make certain the rights or legal status of parties." *Id.* (quoting *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 519 (Pa. Super. 1992)). The Declaratory Judgments Act requires a petitioner "to demonstrate an 'actual controversy' indicating imminent and inevitable litigation and a direct, substantial and present interest." *Cnty. Comm'rs Ass'n of Pa. v. Dinges*, 935 A.2d 926, 931 (Pa. Cmwlth. 2007). It is this last requirement, primarily, that PSERB and PSBA challenge in their POs, which we review under the following standard.

When ruling on preliminary objections, the Court must accept all well-pleaded factual allegations in the petition for review as true along with any reasonable inferences deducible therefrom. *Larry Pitt & Assocs., P.C. v. Butler*, 785 A.2d 1092, 1096 (Pa. Cmwlth. 2001). The Court is not bound, however, by "conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Id.* Preliminary objections should be sustained only where it "appear[s]

8

with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *Id.*

As a threshold matter, we must determine whether PSEA has standing to bring this action. "Standing is a justiciability concern, implicating a court's ability to adjudicate a matter." *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021) (*FOAC*). Accordingly, a court must resolve issues of justiciability before reaching the merits to ensure that the court does not issue improper advisory opinions. *Id.* (citing *Stuckley v. Zoning Hearing Bd. of Newtown Twp.*, 79 A.3d 510, 516 (Pa. 2013)). "The doctrine of standing 'stems from the principle that judicial intervention is appropriate only where the underlying controversy is real and concrete, rather than abstract.'" *Id.* (quoting *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003)). "The touchstone of standing is 'protect[ing] against improper [petitioners].'" *Id.* (quoting *In re Application of Biester*, 409 A.2d 848, 851 (Pa. 1979)). To determine standing, courts require petitioners to "demonstrate he or she has been 'aggrieved' by the conduct" being challenged. *Id.* A party is "aggrieved" for standing purposes when that party's interest in the outcome of the case "is substantial, direct, and immediate." *Id.*

In this regard, our Supreme Court has established the following principles in determining whether a party is "aggrieved" for standing purposes:

> A party's interest is substantial when it surpasses the interest of all citizens in procuring obedience to the law; it is direct when the asserted violation shares a causal connection with the alleged harm; finally, a party's interest is immediate when the causal connection with the alleged harm is neither remote nor speculative.

*Off. of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014). In addition to these principles, "[o]ur existing jurisprudence permits pre-enforcement review of statutory

9

provisions in cases in which petitioners must choose between equally unappealing options and where the third option . . . is equally undesirable." *Robinson Twp., Wash. Cnty. v. Commonwealth*, 83 A.3d 901, 924 (Pa. 2013) (plurality); *see also Cozen O'Connor v. City of Phila. Bd. of Ethics*, 13 A.3d 464, 465 (Pa. 2011) (concluding that law firm had standing to bring declaratory judgment action to clarify whether its forgiveness of the debt of a client, a political action committee, would violate a yearly limit on political contributions); *Donahue*, 98 A.3d 1223 (concluding that the Office of Governor had standing to bring declaratory judgment action to challenge the Office of Open Records' interpretation of the Right-to-Know Law's[5] timeframe for responding to written requests for documents that would have increased the number of deemed denials and cases that would have to be litigated).

Both PSERB and PSBA assert that PSEA lacks standing to bring this action. Specifically, PSERB argues that there is no harm to PSEA, its members, or its local affiliates because no decision regarding withdrawal liability occurs until after a subcontracting or conversion decision is reached. (PSERB's Brief (Br.) at 11.) PSERB contends that the employers that do not pay the withdrawal liability will only affect the funding status of the System, which affects the remaining employers that have to make up the shortfall, not the pension benefits of PSEA members. (*Id.* (citing *Duncan v. Muzyn*, 885 F.3d 422, 428 (6th Cir. 2018)).) PSERB argues that, in this way, the causal connection between the alleged harm and PSERB's future action or inaction is speculative and indirect because "PSEA is not an employer paying into [the System] and will not be directly affected by [the System's] funding status." (*Id.* at 11-13.) Thus, PSERB maintains that PSEA's "true dispute is not with, or caused by, [the System] or [ PSERB]; PSEA's dispute is with the receiver

[5] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

10

and/or school district in Chester Upland and the [S]chool [D]istricts in Pocono Mountain, Shikellamy, and Port Allegany." (*Id.* at 15.) PSBA similarly argues PSEA lacks standing because PSEA has not "allege[d] an actual cognizable right under Section 8327.1 or a cognizable harm to itself or to its [local affiliates] arising <u>by virtue of [] PSERB's alleged action or inaction</u>." (PSBA's Br. at 6-7 (emphasis in original).) PSBA argues that whether, or not, PSERB imposes withdrawal liability does not foreclose a school district from making decisions affecting the employment status of its employees. (*Id.* at 9; *see also* PSBA's PO ¶ 23.) To that end, PSBA asserts that, notwithstanding withdrawal liability, "school districts . . . may still act as they wish" by either converting to a charter school or outsourcing jobs resulting in the furlough of employees, thereby rendering the causal connection between the asserted harm and PSERB's action remote and speculative. (*Id.* at 9-11.) Finally, PSBA argues that the interests PSEA seeks to enforce are "the same common interest of all citizens in procuring obedience to the law at issue" and that the interests sought to be protected under Section 8327.1 are "not the interests of the employees in the [S]ystem or the unions representing public employees," but those of the remaining employers that must make up for any unfunded liability resulting from the withdrawal. (*Id.* at 11, 13.)

PSEA responds that it has standing to bring this action on behalf of itself, its members, and its local affiliates. Specifically, PSEA contends that "[u]nion standing to enforce members' rights is not limited to collective bargaining issues; it extends to any action where there is a direct relationship (causal connection) between the challenged action and harm suffered." (PSEA's Br. in Opp'n to PSERB's POs at 14.) PSEA asserts that this harm includes its members' interest in their pension benefits and both PSEA's and its affiliates' ability to negotiate to prevent

11

subcontracting and charter school conversions, thereby maintaining its members' public employment and its own membership. PSEA explains that, if withdrawal liability was factored into subcontracting decisions, "the 'pension cost avoided' by subcontracting would be significantly off-set by the withdrawal liability charged by" the System, and the resulting negotiations would be based on "real, comparable costs, not costs skewed in favor of subcontracting." (*Id.* at 16.) Because PSERB is not complying with its obligation under Section 8327.1, PSEA asserts that "unions [] face an improperly tilted negotiations table." (*Id.* at 19.) Finally, PSEA asserts that standing in cases brought under the Declaratory Judgments Act have been relaxed as explained by our Supreme Court in *Cozen O'Connor*, *Robinson Township*, *Yocum v. Pennsylvania. Gaming Control Board.*, 161 A.3d 228 (Pa. 2017), *Donahue*, and *FOAC*. (*Id.* at 22, 24.) Based on the allegations contained in its Amended Petition, PSEA maintains it has standing to challenge PSERB's inaction under Section 8327.1. (*Id.* at 25.)

After review, we cannot agree that PSEA has established standing to challenge PSERB's inaction under Section 8327.1 on behalf of itself, its members and its local affiliates because PSEA has not established a substantial, direct, and immediate interest in PSERB's application, or not, of Section 8327.1. In reviewing our Supreme Court's jurisprudence relating to standing under the Declaratory Judgments Act, the case *sub judice* is distinguishable from the cases relied upon by PSEA.

In *Robinson Township*, a physician claimed, in a declaratory judgment action, that the restrictions imposed by former Section 3222.1 of Act 13, *formerly* 58 Pa.C.S. § 3222.1, on obtaining and sharing information with other physicians regarding chemicals used in fracking operations impeded his ability to properly diagnose and

12

treat his patients. The physician asserted that the restrictions forced medical professionals to choose between complying with the statute's mandatory provisions "and adhering to their ethical and legal duties to report findings in medical records and to make th[o]se records available to patients and other medical professionals." *Id.* at 923-24. Our Supreme Court determined that the physician had standing to seek declaratory relief because Act 13 placed the physician in the "untenable and objectionable" position of choosing between violating the law, violating his legal and ethical obligations to his patient, or refusing to treat a patient. This position, the Supreme Court reasoned, meant that the physician's interest was substantial and direct, giving him standing to pursue pre-enforcement review. *Id.* at 924.

Following *Robinson Township*, the Supreme Court addressed another standing challenge under the Declaratory Judgments Act in *FOAC*. There, individual gun owners and a political action committee (FOAC) challenged the validity of five ordinances enacted by the City of Harrisburg (City). The ordinances regulated the use, possession, ownership, and/or transfer of firearms within the City. The City challenged FOAC's standing because FOAC "did not aver that [any of its members] were arrested for violating the ordinances or that they changed their behavior to comply with" the ordinances. *FOAC*, 261 A.3d at 476. The Supreme Court concluded that FOAC and its members had standing, explaining that FOAC's members "currently must make a choice to either comply with the ordinances, thereby forfeiting what they view as their constitutionally and statutorily protected firearms rights[,] or violate the ordinances by exercising their rights, thereby risking criminal prosecution," or to avoid the City altogether. *Id.* at 487. "That [a]ppellees are confronted with these options shows that their interest in the outcome of the constitutionality and preemption of the challenged ordinances is substantial,

immediate, and direct." *Id.* Further, in rejecting a challenge that pre-enforcement challenges could only be brought in industrial or occupational situations, the Supreme Court explained:

> There is no basis to constrain the power granted by the Declaratory Judgments Act. The Declaratory Judgments Act gives courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." 42 Pa.C.S. § 7532. The [Declaratory Judgments] Act refers to the "rights, status, and other legal relations" without qualification and does not limit it to the occupational or business arena.

*Id.* at 490. Thus, it concluded that the Declaratory Judgments Act offered "an avenue of relief for a plaintiff to determine its rights when a law forces upon the plaintiff a number of choices, including surrendering perceived rights to comply with the law," which included FOAC and its members. *Id.*

Applying the Supreme Court's reasoning in *Robinson Township* and *FOAC*, as well as the more traditional interpretations of standing, to the allegations here, PSEA has not shown that it, its members, or its local affiliates have a substantial, direct, and immediate interest in **PSERB's** action, or, in this instance, inaction to establish the standing required to bring this action. The gravamen of PSEA's Amended Petition is that, without knowing whether withdrawal liability will attach if school districts subcontract bargaining unit work or convert schools to charter schools, PSEA, and its local affiliates, cannot effectively bargain **with the public school district employers**. This inability, PSEA argues, violates its obligations under PERA because neither PSEA nor the "[s]chool districts can[] predict the true costs of [] subcontracting without knowing" whether withdrawal liability applies to them – a decision that PSERB is not making. (Am. Petition ¶¶ 26, 36, 46.) PSEA's request for a declaration regarding PSERB's obligations under Section 8327.1 is to

14

aid PSEA, and its local affiliates, in their relationship and transactions with **school district employers**. However, declaratory judgment is not to resolve remote questions or to aid a party in a different transaction. *Petition of Cap. Bank & Tr.*, 6 A.2d 790, 792 (Pa. 1939). The harm PSEA asserts, the subcontracting of bargaining unit work and charter school conversions, is not the immediate or direct result of the challenged action of PSERB, but of the school district employers' decisions. As PSEA admits in its response to PSBA's PO, school districts could still choose to subcontract bargaining unit work even if PSERB was to impose withdrawal liability on those school districts. (PSBA's POs ¶ 23; PSEA's Answer to PSBA's POs ¶ 23.) Because PSERB's decision may not affect the ultimate decision of a school district to subcontract bargaining unit work resulting from negotiations, PSEA's interests in PSERB's decision is not direct or immediate. Accordingly, there is a lack of causal connection between the harm and the challenged action.

Further, Section 8327.1 applies to **employers'** obligations to the System **if** they become nonparticipating **employers** and/or the obligations of the remaining **employers** that must assume responsibility for any unfunded liability. Unlike the physician in *Robinson Township* or the firearm owners in *FOAC*, Section 8327.1 does not require PSEA to choose between "equally unappealing options," *Robinson Township*, 83 A.3d at 924. And PSERB's refusal to render a preliminary decision as to the application of Section 8327.1 to a particular situation does not prevent PSEA from bargaining over subcontracting and/or charter school conversions. PSEA acknowledges that a school district's potential withdrawal liability under Section 8327.1 can be calculated using the formula set forth in Section 8327.1(c), stating "[a] close approximation of the amount due can be developed by the school district and the union as part of the negotiations related to subcontracting." (PSEA's

15

Br. at 19 n.2.); *see also* 24 Pa.C.S. § 8327.1(c).[6] Thus, PSEA's allegation that, absent PSERB action, PSEA and its local affiliates will be unable to know the cost of subcontracting or converting to a charter school is inconsistent with Section 8237.1(c).

Additionally, a decision in this case will **not** afford the parties "relief from uncertainty and insecurity with respect to rights, status, and other legal relations,"

---

[6] Section 8327.1(c) provides:

**Calculation of withdrawal liability.--**A nonparticipating employer's withdrawal liability shall be determined as of the employer's nonparticipation date and shall be calculated as follows:

(1) For a nonparticipating employer under subsection (a)(1), the excess of the actuarial present value of the vested accrued benefits of the [S]ystem's members over the market value of assets, both as of the date of the last actuarial valuation adopted by the board prior to the employer's nonparticipation date, shall be multiplied by a withdrawal fraction, calculated as follows:

(i) The numerator of the withdrawal fraction shall be the total present value of accrued benefits of all active members of the employer.

(ii) The denominator of the withdrawal fraction shall be the total present value of accrued benefits of all active members of the [S]ystem.

(2) For a nonparticipating employer under subsection (a)(2), the excess of the actuarial accrued liability of the [S]ystem's members over the market value of assets, both as of the date of the last actuarial valuation adopted by the board prior to the employer's nonparticipation date, shall be multiplied by a withdrawal fraction, calculated as follows:

(i) The numerator of the withdrawal fraction shall be the total present value of accrued benefits of all active members of the employer.

(ii) The denominator of the withdrawal fraction shall be the total present value of accrued benefits of all active members of the [S]ystem.

24 Pa.C.S. § 8327.1(c).

42 Pa.C.S. § 7541(a), associated with Section 8327.1 because neither PSEA, its members, nor its local affiliates are themselves subject to having to pay withdrawal liability under that provision. Only employers that are determined by PSERB to be "nonparticipating employers" would be subject to withdrawal liability under Section 8327.1. For these reasons, PSEA does not have to make a difficult decision to comply with Section 8327.1 or to violate it, like the parties who were found to have standing in *Robinson Township* and *FOAC*. As such, PSEA has not established that its interest in the challenged action is "substantial, direct[,] and immediate." *Robinson Township*, 83 A.3d at 917.

PSEA also asserts associational standing on behalf of public school employees because its employee members have an interest in their pension benefits and the funding of the System and because public school employees may face furloughs if their employers decide to subcontract their bargaining unit work or convert schools to charter schools. "An association has standing to bring an action on behalf of its members where at least one of its members is suffering an immediate or threatened injury as a result of a challenged action." *Americans for Fair Treatment, Inc. v. Phila. Fed'n of Teachers*, 150 A.3d 528, 533 (Pa. Cmwlth. 2016). An association needs to show "that at least one of its members has a substantial, direct[,] and immediate interest." *Id.* "Where the organization has not shown that any of its members have standing, the fact that the challenged action implicates the organization's mission or purpose is not sufficient to establish standing." (*Id.* at 534 (citing *Armstead v. Zoning Bd. of Adjustment of City of Phila.*, 115 A.3d 390, 399-400 (Pa. Cmwlth. 2015); *Concerned Taxpayers of Allegheny Cnty. v. Commonwealth*, 382 A.2d 490, 494 (Pa. Cmwlth. 1978)).)

17

PSEA's members' interests in their individual pensions do not necessarily translate into standing, absent allegations of mismanagement that places those pensions in jeopardy, to challenge how the System is funded or managed because any alleged injury is speculative or hypothetical. *See Duncan*, 885 F.3d at 428 (holding pension beneficiaries lacked standing because any harm caused was hypothetical where they were still receiving benefits and there were no allegations that the challenged actions put the pension fund at risk of default). Whether the withdrawal liability is imposed on employers that become "nonparticipating employers," 24 Pa.C.S. § 8327.1, through subcontracting or charter school conversion, PSEA does not assert that the unfunded liability would be passed onto its members or that its members' pension benefits are reduced as a result. Further, because, as PSEA acknowledges, a school district could still choose to subcontract bargaining unit work even if PSERB imposed withdrawal liability, the causal relationship between the challenged action and the harm to PSEA's members' employment status is remote, not direct. Accordingly, PSEA may not assert the interests of its employee members to establish associational standing in order to challenge PSERB's actions in relation to Section 8327.1.

## III. CONCLUSION

For the reasons stated above, PSEA has failed to establish the requisite standing needed to bring this action, and we sustain PSERB's and PSBA's corresponding POs, dismiss PSEA's Amended Petition on this basis, and dismiss the remaining POs as moot.

_____
**RENÉE COHN JUBELIRER,** President Judge

Judges Dumas and Wallace did not participate in the consideration of this matter.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Education      :
Association,      :
            Petitioner      :
     :
         v.      :     No. 199 M.D. 2021
     :
Public School Employees'      :
Retirement Board,      :
           Respondent      :

# **O R D E R**

**NOW**, July 21, 2022, the preliminary objections filed by the Public School Employees' Retirement Board and Intervenor Pennsylvania School Boards Association, Inc. to Pennsylvania State Education Association's (PSEA) Amended Petition for Review in the Nature of a Complaint Seeking Declaratory Judgment (Amended Petition) challenging PSEA's standing is **SUSTAINED**, the Amended Petition is **DISMISSED** on this basis, and the remaining preliminary objections are **DISMISSED AS MOOT**.

_____
**RENÉE COHN JUBELIRER,** President Judge